UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-627-H

LESLEY LYNNE HILL  PLAINTIFF

V.

LANIER PARKING METER SERVICE, LLC  DEFENDANT

**MEMORANDUM OPINION**

Lesley Lynne Hill ("Plaintiff") filed suit against her former employer, Lanier Parking Meter Service, LLC ("Lanier"), claiming that Lanier violated both the Kentucky Civil Rights Act as well as Kentucky common law. Plaintiff claims that she was subjected to sexual harassment in violation of KRS § 344.040, retaliation for reporting the alleged harassment in violation of KRS § 334.280, and that she was wrongfully discharged in violation of common law. Lanier has moved for summary judgment on all claims.

The circumstances here are unusual and at least one of Plaintiff's claims is unusual as well. After considerable study and thought, however, the Court concludes that these unusual factors do not create any viable cause of action. For the reasons that follow the Court agrees with Lanier that Plaintiff's claims cannot survive summary judgment.

I.

Lanier is engaged in the business of managing parking facilities for various governmental and municipal agencies. On September 1, 2004, Lanier entered into a contract with the Parking Authority of River City ("PARC") to monitor, administer and enforce the Louisville Metro

Government's "on-street" (metered parking along streets and roadways) parking rules and regulations. In March, 2006, Lanier hired Plaintiff as the assistant manager for its Louisville on-street parking operation. A few months later, the position of Manager came open. Plaintiff applied for the job. However, in October 2006, Lanier hired Mark Jump ("Jump") as the Manager and Plaintiff began reporting to him. Over the next fourteen (14) months, Plaintiff says that Jump and others took actions that amounted to sexual harassment, retaliation and wrongful termination.

The Court has attempted to accurately describe all of the actual direct evidence that could support the various claims. Plaintiff testified that over a twelve month period, Jump: (1) kissed her once during a smoke break; (2) commented several times about Plaintiff's use of a tanning bed and commented on her lack of tan lines; (3) once asked Plaintiff if he could watch her tan in a tanning bed to see how she tanned without getting any tan lines; (4) put his hands on her shoulders and rubbed her shoulders about once a week; (5) sometimes put his arm around Plaintiff while she was outside of the building on smoke breaks; (6) sometimes stood immediately behind her while she was bending over to lift heavy money bags and would put his hands on her waist; (7) commented about her pants fitting tightly; and (8) sent her certain electronic instant messages in February and March of 2007.

The electronic instant messages, sent between February 19, 2007, and March 26, 2007, which Plaintiff found offensive included: "Hey there sexy ...," "blood pressure now ... lol," "it's all you," "anything for you ....," "waiting to hear that from you ....," "Im wearing blue ... thought I'd tell you before you asked ... lol," "Is it boxers or briefs?", "what do you think? ... lol," "I need to walk to Chase to get change, want to get out and walk?", "I think it's a good idea ....because of my feelings for you .... something would do with no strings attached ...," "a

2

massage is doable ... lol," "I can go on if you want ....," "Morning beautiful ...," "Miss u....," "Need any help? I'm working on my responses .... can rub your feet if you want ...." The messaging ended after March, 2007.

Lanier had established a company non-harassment policy which was known to Plaintiff. The policy provided that employees should report harassment claims to their supervisor or the Human Resources ("HR") Department. This provision is typical of reporting policies which seek to have reports of harassment handled by neutral persons, rather than direct superiors of one accused.

Plaintiff first discussed Jump's conduct with Jump's supervisor, Steve Hernandez ("Hernandez"), in January 2007. Hernandez was the General Manager of the Louisville operation and was Jump's direct supervisor. Hernandez was neither Plaintiff's supervisor nor a member of the HR department. Plaintiff told Hernandez that Jump touched her on her shoulders and it made her uncomfortable. Hernandez advised Plaintiff that he would telephone her to talk about her concerns with Jump. However, when Hernandez called Plaintiff several days later, Jump was in the room with her and she advised Hernandez of that fact. Hernandez did not conduct an extensive investigation. On one other occasion, the date of which Plaintiff could not pinpoint, she spoke to Hernandez about the fact that Jump was sending her unwanted emails. This must have occurred in early 2007, as those emails apparently ceased in March of 2007.

On January 9, 2008, another Lanier manager, Scott Diggs ("Diggs"), contacted Plaintiff about comments he had heard from Hernandez and Jump about her quitting. Plaintiff told Diggs that Hernandez was planning on firing her. She also told Diggs about Jump's actions toward her and her efforts to report them to Hernandez. Diggs immediately reported the matter to Kathryn Dunn, Director of Lanier's Human Relations Department, who began an investigation. The

subsequent investigation confirmed some of Plaintiff's complaints. Consequently, Lanier decided to terminate Jump's employment on January 31, 2008, due to his inappropriate conduct. After terminating Jump, Lanier promoted Plaintiff to Jump's former position on February 1, 2008, increased her salary by $5,000.00 to $50,000.00 per year, and advised her that she needed to be professional and courteous.

A month later, in late March 2008, Plaintiff became aware of at least one Lanier Enforcement Officer (LEO)[1] who had several unpaid parking tickets. She discovered that employees with an outstanding parking citation are without authority to issue parking citations. Plaintiff reported her findings to Lanier management and asked how she should remedy the matter. After discussing the situation with Lanier officials, everyone agreed that Plaintiff should issue a memo to all employees providing them with a 48-hour grace period to pay all outstanding parking citations or face discipline. On April 2, 2008, Plaintiff posted a memo stating as much on the company bulletin board. Perhaps motivated by the memo, some employees contacted their Union Steward, who in turn complained to Lanier's corporate offices. The Union officials told Lanier that Plaintiff was "out of control" and that they needed to investigate immediately.

Kathryn Dunn again conducted an investigation by interviewing all available employees in Lanier's Louisville on-street parking office from April 7-8, 2008, including twelve LEOs and four administrative personnel, including two assistant managers. She took handwritten notes of her interviews. At the conclusion of the investigation, Lanier concluded that Plaintiff had engaged in work conduct, including uttering racial slurs and other offensive comments pertaining to race and gender, that was incompatible with her position. Consequently, Lanier

---

[1] LEO's are responsible for issuing parking citations under local ordinance and state statute.

decided to terminate Plaintiff on April 15, 2008, specifically noting in her file was that she was not eligible for rehire.

Plaintiff claims that the sexual harassment she suffered at the hands of Jump created a hostile work environment. She also alleges that Lanier did not fire her for the reasons that they stated (lack of confidence in her ability to effectively lead and manage the staff), but rather, in retaliation for the fact that she reported the alleged harassment. Finally, Plaintiff claims that her termination was contrary to a well-defined public policy, specifically the policy embodied within Kentucky's "whistleblower" statute, in violation of Kentucky common law wrongful discharge principles.

## II.

Summary Judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d, 357, 361 (6th Cir. 2001).

## III.

A sexual harassment claim under the Kentucky Civil Rights Act requires the same analysis as a claim brought under Title VII. *Ammerman v. Bd. of Educ. Of Nicholas Cnty.*, 30 S.W.3d 793, 797-98 (Ky. 2000). To establish a prima facie case of sexual harassment on the basis of a hostile work environment, "a plaintiff must show that: (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the

5

employer is vicariously liable." *Clark v. UPS*, 400 F.3d 341, 347 (6th Cir. 2005). Lanier acknowledges that Plaintiff has established the first three elements of the prima facie case. The only remaining question is whether Plaintiff has established the fourth and fifth elements.

A.

The Court must consider the totality of the circumstances when determining whether sexual harassment was severe or pervasive enough to create a hostile work environment, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court has been adamant in making clear that conduct such as "'simple teasing', offhand comments, and isolated incidents (unless extremely serious)" does not create a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *See Oncale v. Sundower Offshore Servs.*, 523 U.S. 75, 81-82 (1998).

Jump's conduct was inappropriate and potentially offensive. However, it was neither threatening or humiliating. There was no sexually inappropriate or hostile attitude that permeated the entire workplace. Moreover, Plaintiff presented no evidence that Jump's conduct interfered with her work performance in such a way to establish a hostile work environment. Finally, Jump's most sexually suggestive emails ended soon after Plaintiff's first complaint and did not renew. In sum, Jump's conduct was not as sexual, severe or pervasive as other conduct that the Sixth Circuit has determined to be severe or pervasive enough to establish a hostile work environment claim. *See Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 822-23 (6th Cir. 1992); *Williams v. GMC*, 187 F.3d 553, 563-64 (6th Cir. 1999)*; EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 508-09 (6th Cir. 2001); *Hanley v. Chevy Chaser Magazine, LLC*, 199 Fed. Appx.

425, 429-30 (6th Cir. 2006) (unpublished).

B.

Even if Plaintiff could establish the existence of a hostile work environment, she could not establish the fifth element of the prima facie case because Lanier is not vicariously liable.

"[A]n employer is vicariously liable 'for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) (citing *Burlington Indus v. Ellerth*, 118 S. Ct. 2257, 2270 (1998)). However, the employer has an affirmative defense to liability if it can "show by a preponderance of the evidence that (a) 'the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Clark*, 400 F.3d at 348 (citing *Faragher*, 524 U.S. at 807-08). "Generally, an employer satisfies the first part of this two-part standard where it has promulgated and enforced a sexual harassment policy." *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008). There is no dispute as to whether Lanier satisfies the first part of the standard. Lanier has a sexual harassment policy of which Plaintiff was well aware. The only question is whether Plaintiff took advantage of the policy and whether Lanier responded appropriately.

Lanier's harassment policy required a victim of sexual harassment to report the harassment to either their supervisor or to the HR department. It would be unreasonable to expect Plaintiff to report the harassment to her supervisor considering that the individual who was inflicting the harassment, Jump, was also her supervisor. Lanier's policy provided Plaintiff with an alternative remedy – reporting to its human resources department. Plaintiff failed to do

7

this. There is no doubt as to the effectiveness of the policy, Plaintiff simply failed to take advantage of the policy. As soon as word of the harassment reached the appropriate people, Lanier investigated the matter and took effective action. From these circumstances, no one can reasonably conclude that Lanier condoned Jump's conduct, allowed it to continue after an appropriate notification or could be found vicariously liable for the actions of its manager prior to proper notification about them.

IV.

Excluding a slight difference in individual liability,[2] a retaliation claim under Kentucky law requires the same analysis as a Title VII retaliation claim. *Curtis v. Hanger Prosthetics & Orthodics, Inc.*, 101 Fed. Appx. 61, 64 (6th Cir. 2004) (unpublished) (citing *Mountain Clay, Inc., v. Commonwealth*, 830 S.W.2d 395, 396 (Ky. App. 1992)). To establish a prima facie case of retaliation, a plaintiff must show that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Lanier acknowledges that Plaintiff has established the first three elements. Thus, the only question for the Court is whether there is a genuine dispute as to causality.

A.

"To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon v.*

---

[2] Kentucky law allows individual liability under a retaliation claim while Title VII does not. *See* 42 U.S.C. § 2000(e) *et seq.*; KRS § 44.280; *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793-94 (6th Cir. 2000).

*Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-517 (6th Cir. 2009); *See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).

There is no evidence that Lanier treated Plaintiff differently from similarly situated individuals. Moreover, the Sixth Circuit has said that an inference of retaliation arises from temporal proximity alone only in those "*distinct cases* where the temporal proximity between the protected activity and the adverse employment action is *acutely near in time*." *DiCarlo v. Potter*, 358 F.3d 408, 241 (6th Cir. 2004) (emphasis added). Considering the temporal proximity of over three months, this case does not appear to be one of those distinct cases. *See Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986); *McNett v. Hardin Cmty. Fed. Credit Union,* 118 F. App'x 960, 965 (6th Cir. 2004); *Shefferly v. Health Alliance Plan of Michigan*, 94 F. App'x 275, 285 (6th Cir. 2004).

Moreover, intervening events suggest the absence of a plausible inference to connect Plaintiff's protected activity and the adverse action that Lanier later took. Lanier took two major actions entirely inconsistent with retaliation during those intervening three months – terminating Jump and promoting Plaintiff. These intervening acts further weaken the already limited inference of a causal connection. To be clear, an employer's intervening actions that favor or benefit a plaintiff do not insulate the employer from liability. *See Hamilton v. GE*, 556 F.3d 428, 436 (6th Cir. 2009). Rather, such events undermine the inference of a causal connection. It seems inconceivable that Lanier would terminate the individual harassing Plaintiff within weeks

9

of her making the complaint on January 9, 2008, promote Plaintiff on February 1, 2008, and then retaliate against her on April 15, 2008.

Had Lanier intended to retaliate against Plaintiff, things would have progressed very differently following her report of the harassment. Lanier could have placed Plaintiff's actions under greater scrutiny and waited for the first available opportunity to terminate her. However, it was the Union, not Lanier, that instigated the investigation that actually lead to Plaintiff's termination. All indications are that both Plaintiff and Lanier had moved past the harassment incident by the time the investigation of Plaintiff began.

B.

Even if Plaintiff can be said to have established a prima facie case of retaliation, Plaintiff's claim still does not survive summary judgment because Lanier has established non-discriminatory reasons for her termination.

"Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997). Defendant easily satisfies this burden. It is an undisputed fact that Lanier informed Plaintiff that the reason for her termination was Lanier's lack of confidence in her ability to effectively lead and manage the staff following Kathryn Dunn's investigation. "If the defendant demonstrates [a non-discriminatory reason], the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id*.

"To meet [her] burden on pretext, the plaintiff must produce evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Haughton v. Orchid Automation*, 206 F. App'x 524, 531 (6th Cir. 2006). A plaintiff "can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the

defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Plaintiff has not met her burden of showing pretext. Plaintiff does not dispute that Kathryn Dunn's interviews of employees under Plaintiff's supervision revealed that Plaintiff had uttered racial slurs and offensive comments pertaining to race and gender. It is entirely believable that such conduct would undermine Lanier's confidence in Plaintiff's ability to effectively lead and manage the staff. Furthermore, it is entirely consistent that Lanier would terminated Plaintiff for such conduct considering that they terminated Jump for similarly offensive conduct that fell short of actual sexual harassment.

V.

Under Kentucky law, the wrongful termination doctrine provides an exception to the concept of at-will employment. *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 732 (Ky. 1983). It prohibits the termination of an employee that is "contrary to a fundamental and well-defined public policy as evidenced by existing law. . . The public policy must be evidenced by a constitutional or statutory provision." *Id*. at 731 (quoting *Brockmeyer v. Dun & Bradstreet,* 335 N.W.2d 834, 840 (Wis. 1983)). The policy that Plaintiff evokes is one embodied in KRS § 61.102, also known as the whistleblower statute. That policy prohibits terminating employees who report or disclose actual or suspected violations of the law. Plaintiff alleges that Lanier fired her for revealing that several LEOs had unpaid parking tickets.

There is indeed a public policy against terminating employees who report or disclose actual or suspected violations of the law. However, the Supreme Court of Kentucky has held, "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided in the statute." *Gryzb v.*

11

*Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Not only does the whistleblower statute declare the unlawful act, but it also specifies the available civil remedies, such as: reinstatement of the employee; payment of back wages; punitive damages; and litigation costs. *See KRS § 61.990(4).* If Lanier truly terminated Plaintiff for being a whistleblower, the appropriate claim is for a violation of the whistleblower statute, not a wrongful discharge claim.[3]

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record

---

[3] The Court notes that there are serious doubts as to whether Plaintiff could even establish a claim under the whistleblower statute. Plaintiff would have to show, among other things, that Lanier is an officer of the state or one of its political subdivisions and that she is a state employee or an employee of a political subdivision. Plaintiff may have trouble establishing both of those elements.